**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JULY 18, 2024

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 18, 2024

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Personal Restraint of | No. 101144-0 |
| OLAJIDE ADEL FLETCHER, | EN BANC |
| Petitioner. | Filed: July 18, 2024 |

GORDON MCCLOUD, J.—When the trial court calculated Olajide Adel Fletcher's sentence, it erroneously included two prior juvenile adjudications in his offender score. As a result, Fletcher's offender score was higher than it should have been, his standard sentence range was *much* higher than it should have been, and the trial court did not know how much of a departure above the high end of that range it really imposed. All of these errors are clear from the face of the felony judgment and sentence (J&S).

The superior court therefore granted Fletcher's postconviction motion for a new sentencing hearing based on correct calculations—despite the fact that it was filed after the usual one-year deadline for seeking such relief had elapsed. The trial court relied on RCW 10.73.090, which states that the usual one-year deadline applies only to claims where the "the judgment and sentence is valid on its face"—not to claims

like Fletcher's where the J&S is riddled with critical errors and therefore invalid on its face. The trial court then imposed a far lower sentence, which has now resulted in Fletcher's release from prison.

The Court of Appeals, however, reversed and remanded to the trial court to reimpose the original sentence, with the original, erroneous, calculations. It agreed with the trial court that the J&S was invalid on its face and hence exempt from the one-year time bar. It reversed the trial court for a different reason: it ruled that Fletcher's postconviction motion violated a different procedural rule (the bar on filing second or successor postconviction motions in certain circumstances). We denied review.

But these issues are squarely in front of us now, in Fletcher's third postconviction motion, which was filed directly in our court. This current personal restraint petition (PRP) is timely, because the J&S's serious sentence calculation errors make it invalid on its face. This is true regardless of whether Fletcher stipulated to an exceptional sentence. The trial court, not the parties, is responsible for deciding whether to impose an exceptional sentence, and the trial court is responsible for deciding the extent of any departure from the standard range that it chooses. The original sentencing court could not possibly do that in a fair, statutorily authorized, or reliable way given the extreme miscalculation of Fletcher's offender score and standard sentence range. The fact that both the

parties and the sentencing court all made the same calculation errors does not make his facially erroneous J&S "valid." Moreover, under the circumstances presented here, Fletcher's facially invalid J&S has resulted in a complete miscarriage of justice.

We grant the PRP and remand to the trial court to resentence Fletcher using the accurate offender score and standard sentence range.

FACTUAL AND PROCEDURAL HISTORY

I.    Fletcher pleaded guilty and stipulated to an exceptional sentence
      above the standard range

In November 2015, Fletcher went with his girlfriend to retrieve his television from Alex Tauveve, and, after a dispute, Fletcher shot Tauveve in the legs five times. Clerk's Papers (CP) at 4, 7-8.[1] The State charged Fletcher with assault in the first degree in Grant County, Washington. *Id.* at 1 (information).

After plea negotiations, the prosecutor amended the charges to assault in the second degree with a firearm enhancement and unlawful possession of a firearm in the first degree. *Id.* at 118-19.

In exchange for Fletcher's plea to the amended charges, the prosecutor recommended an exceptional sentence of a total of 10 years of confinement (120

---

[1] In our order granting review, we also granted the State's motion to transfer the record from *State v. Fletcher*, No. 37661-3-III, to this case. Ord., *In re Pers. Restraint of Fletcher*, No. 101144-0 (Wash. Jan. 4, 2023).

months), the statutory maximum for both crimes. *Id.* at 14. The prosecutor also

agreed to refrain from filing any more charges against Fletcher for the incident and

to refrain from charging Fletcher's girlfriend. *Id*. This summarizes the prosecutor's

recommendation:

| Crime | Offender Score | Standard range in months | Enhancement in months | Prosecutor's recommendation in months |
|---|---|---|---|---|
| Unlawful possession of a firearm in the first degree[2] | 5 | 41-54 | | 41, to run concurrently |
| Second degree assault with a deadly weapon[3] | 8 | 53-70 | 36, to run consecutively | 84 (exceptional) + 36 (enhancement) = 120 |

Fletcher's plea agreement shows that the parties agreed to an

*Alford/Newton*[4] plea (a plea without admission of guilt) and a stipulated

exceptional sentence. *Id.* at 10-21. In lieu of admitting guilt, Fletcher stated:

> Instead of making a statement, I agree that the court may review the
> police reports and/or a statement of probable cause supplied by the

---

[2] In violation of RCW 9.41.040(1)(a).

[3] In violation of RCW 9A.36.021(1)(c) and RCW 9.94A.533(3).

[4] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

> prosecution to establish a factual basis for the plea. I further agree there are substantial and compelling reasons for an exceptional sentence in this case.

*Id*. at 19. This guilty plea did not list the "substantial and compelling reasons" supporting an exceptional sentence. RCW 9.94A.535. And it did not require Fletcher to agree with the prosecutor's recommendation.

Nevertheless, at the sentencing hearing, defense counsel did agree with the prosecutor's recommendation. Verbatim Rep. of Proc. (VRP) (Feb. 23, 2016) at 14. The sentencing court did, also; it sentenced Fletcher to 120 months of total confinement on the second degree assault count, concurrent with 41 months of confinement on the first degree unlawful possession of a firearm count. *Id*. at 15; CP at 26 (J&S).

II.     Fletcher filed an arguably belated, second CrR 7.8 motion; the superior court retained it for decision on the merits after determining that the J&S was facially invalid

In 2016, Fletcher filed a pro se CrR 7.8 motion; the superior court transferred it to the Court of Appeals for treatment as a PRP, and the Court of Appeals dismissed.[5]

---

[5] In this motion, Fletcher essentially raised an *Apprendi* argument that the court improperly imposed a sentence above the high end of the range and that the court cannot do that without a jury finding or stipulation. *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); CP at 42-43. But Fletcher had stipulated, so the trial court transferred the motion to the Court of Appeals to be treated as a PRP because Fletcher failed to make a substantial showing that he was entitled to relief. CP at 47-50; CrR 7.8(c)(2). The Court of Appeals dismissed the PRP, holding that Fletcher

5

In 2019, more than three years after his J&S became final, Fletcher filed another CrR 7.8 motion. CP at 58. In this motion, he argued pro se that his J&S was invalid on its face because his offender score and standard range were too high; he sought a resentencing hearing. *Id.* at 59-67, 85-86.

His argument about his offender score and standard range was correct: the trial court counted two prior juvenile adjudications for attempted second degree assault that should have "washed out,"[6] and they made his offender score and standard range for both current crimes higher than they should have been. The magnitude of this error was significant; once the washed out juvenile adjudications were removed from Fletcher's offender score, the top of the standard range for assault dropped from 70 months (nearly six years) to 20 months (less than two years). *Id.* at 25, 562.

The superior court determined that Fletcher had shown good cause for failing to raise the new ground in his first CrR 7.8 motion. *Id.* at 163. The superior

---

properly stipulated to an exceptional sentence over the standard range for the second degree assault conviction, and that a proper stipulation can support an exceptional sentence. CP at 53-54.

[6] Fletcher's criminal history included a juvenile adjudication in 2006 for assault in the second degree and two counts of attempted assault in the second degree. CP at 24. Additionally, Fletcher's criminal history included an adult conviction in 2008 for theft in the first degree and assault in the third degree. *Id*. Fletcher argued that his two counts of juvenile attempted assault in the second degree should not have been included in his offender score because they "washed out" per *State v. Moeurn*, 170 Wn.2d 169, 240 P.3d 1158 (2010). *Id.* at 62, 65.

court appointed counsel and scheduled a hearing on this second CrR 7.8 motion. *Id.* at 163-64.

The State conceded that Fletcher's offender score was miscalculated due to inclusion of the prior washed out juvenile convictions. *Id.* at 165. But the State argued that this error did not invalidate his J&S because Fletcher stipulated to an exceptional sentence of the statutory maximum (120 months), so the offender score and standard range were essentially irrelevant. *Id.* at 166-67.

The superior court issued a thorough written ruling, determining that the J&S was invalid on its face because the offender score and standard range were improperly high; thus, Fletcher's motion was timely. *Id.* at 231-39.

The superior court then ruled that Fletcher was entitled to resentencing. *Id.* at 475. It determined that Fletcher was prejudiced by the original sentencing court's reliance on an incorrect offender score and standard range. *Id.* Additionally, the court ruled that Fletcher cannot withdraw his stipulation about the availability of an exceptional sentence. *Id.*

III. The superior court resentenced Fletcher, the Court of Appeals reversed, and our court denied review of that Court of Appeals decision

At the resentencing hearing, the State asked the court to sentence Fletcher to the same 120-month sentence that he had received before. VRP (July 16, 2020) at 129. Fletcher requested a lower sentence, explaining that he had taken significant

7

steps toward rehabilitation and that he had two children who were "growing up without [him]." *Id.* at 132-33.

The trial court basically agreed. It began by noting that an exceptional sentence must be "consistent with and in furtherance of the interests of justice and the purposes of the [SRA[7]]" and that imposing an exceptional sentence is an extraordinary measure that "can't be taken lightly by the court." *Id.* at 135-36. The trial court looked to the language of the SRA and determined that one of its main purposes is "equity and equality of sentences." *Id.* at 139.

That court also discussed the difficulty of resentencing Fletcher based on a guess at what would have occurred during plea negotiations if the parties had known the correct, far lower, offender score. It stated that some factors suggested that the lower offender score undermined the strength of the State's bargaining position. The plea negotiations were based on a mistaken offender score and standard range sentence—both of which were significantly higher than they should have been. *Id.* at 139-40. The trial court calculated that the mistaken offender score made the sentencing range listed on the J&S 74 to 89 percent higher than it should have been. *Id.* at 141. The court also noted that the police report supporting the plea was only six pages long, that it lacked important information, that the State

---

[7] Sentencing Reform Act of 1981, ch. 9.94A RCW.

would have had to prove an intent to cause great bodily harm if it had gone to trial on assault in the first degree as originally charged, and that Fletcher could have raised a claim of self-defense. *Id.* at 142-46.

On the other hand, the court stated that the lower offender score could have had little to no effect on the strength of the State's bargaining position. After all, the victim was shot five times and sustained serious injuries. *Id*. at 145. In addition, as part of the original agreement, Fletcher had already gained the benefits of a reduced charge and an agreement not to charge his girlfriend. *Id.* at 141.

The trial court weighed both sides:

> And so what's difficult for me to really know or to have any confidence about is with the bargaining and calculations and the risks that the parties were calculating with what they thought the range was and what they had in mind with the higher range. What's difficult is if the defendant, maybe the [S]tate too, would have made a different calculus if the correct offender score was known or different considerations.

*Id.*

The court then ruled that it could not "conclude that the interests of justice and purposes of the [SRA] under these set of facts are furthered with an exceptional sentence." *Id.* at 146. It imposed a much lower term of incarceration on resentencing. This chart shows the term of incarceration imposed for each of Fletcher's two convictions at his initial sentencing and, then, in the shaded boxes to the right, the term imposed at resentencing:

| Crime | Offender Score | Standard range in months | Enhancement in months | Sentence in months |
|---|---|---|---|---|
| Unlawful possession of a firearm in the first degree (original) | 5 | 41-54 | | 41, to run concurrently |
| Unlawful possession of a firearm in the first degree (resentence) | 3 | 31-41 | | 41, to run concurrently |
| Second degree assault with a deadly weapon (original) | 8 | 53-70 | 36, to run consecutively | 84 (exceptional) + 36 (enhancement) = 120 |
| Second degree assault with a deadly weapon (resentence) | 4 | 15-20 | 36, to run consecutively | 20 + 36 (enhancement) = 56 |

CP at 562-63. In other words, Fletcher was resentenced to a total of 77 months of confinement (41 months on the first degree unlawful possession of a firearm count concurrent with 20 months on the second degree assault, plus a 36-month enhancement to run consecutively to the base sentence). *Id*. at 562-63, 579.

The State appealed.[8] Before the Court of Appeals issued its decision, Fletcher completed his modified sentence and was released on March 4, 2021. Nearly eight months later, the Court of Appeals reversed and reinstated Fletcher's original sentence on procedural grounds.

The Court of Appeals actually *agreed* with the trial court that the original J&S was facially invalid; it explained that "when the miscalculation of an offender score and standard range sentence can be determined from the judgment, it renders the judgment facially invalid even when the court imposes the recommended exceptional sentence." *State v. Fletcher*, 19 Wn. App. 2d 566, 572-73, 497 P.3d 886 (2021) (footnote omitted). The court reasoned that a sentencing court must know what the proper standard range sentence is before it can determine what sentence would be "exceptional." *Id.* at 578.

The appellate court nevertheless reversed. It reasoned that Fletcher failed to establish "good cause" for failing to raise the calculation errors in his first CrR 7.8 motion, so his second CrR 7.8 motion was improperly successive. *Id.* at 580. It therefore reversed the superior court's decision to grant relief, vacated the amended J&S, and directed the superior court to reinstate the original J&S. *Id.* at 581-82.

---

[8] This was an appeal of Fletcher's CrR 7.8 motion. This was an appeal as of right to the Court of Appeals; it was not a PRP that would have been subject to transfer to our court as a successor PRP. RCW 10.73.140; *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 362, 256 P.3d 277 (2011).

Fletcher filed a petition for review, which our court denied. Ord., *State v. Fletcher*, No. 100623-3 (Wash. July 11, 2022). The mandate issued in July 2022, over a year after Fletcher was released on his modified sentence. The superior court was ordered to schedule a remand hearing "on the next available motion calendar" in order "to reinstate [Fletcher's] original judgment and sentence" and return him to prison. Mandate, *State v. Fletcher*, No. 37661-3-III (Wash. Ct. App. July 21, 2022); *Fletcher*, 19 Wn. App. 2d at 582.

    IV.    Fletcher filed a PRP directly in our court, reraising the offender score and standard range calculation problems—this is the PRP before us now

In August 2022, shortly before the remand hearing and well after a year since his J&S became final, Fletcher filed this current PRP directly in our court raising the same offender score issue.

Our court first transferred the PRP to Division Three of the Court of Appeals. Division Three transferred the PRP back to our court because the PRP was successive but raised a potentially meritorious claim. Ord. Transferring Pet. to Sup. Ct., *In re Fletcher*, No. 39088-8-III (Wash. Ct. App. Aug. 5, 2022); RCW 10.73.140; *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 362, 256 P.3d 277 (2011). In the meantime, Fletcher had filed an emergency motion to remain free on personal recognizance until this current PRP is resolved, asserting that since his release in March 2021, he has been "a law-abiding citizen" who "works and provides

12

for his family," including his fiancée and two children. Emergency Mot. for Pet'r's Release, *In re Pers. Restraint of Fletcher*, No. 101137-7, at 1 (Wash. Aug. 3, 2022). Our commissioner treated this emergency motion for release as a motion to stay the trial court remand hearing and granted it. Ruling Staying Resentencing, *In re Pers. Restraint of Fletcher*, No. 101144-0 (Wash. Aug. 15, 2022). As a result, Fletcher has been out of custody for nearly three years. If his PRP is denied, Fletcher will be summarily returned to prison to serve out the remainder of his original sentence.

## ANALYSIS

We agree with the judges at the trial court and the Court of Appeals who ruled that Fletcher's PRP is exempt from the usual one-year time bar because his J&S is invalid on its face. We further hold that the facial error on his J&S constitutes a fundamental defect that inherently resulted in a complete miscarriage of justice. Fletcher is therefore entitled to relief. As a result, we grant his PRP.

> I.    Fletcher's J&S, which reflects a high-end standard range of 70 months rather than the 20 months permitted by law, is invalid on its face; hence, the 1-year time limit does not apply and his PRP is timely

"No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). Fletcher filed this PRP more than one

13

year after his J&S became final. Hence, this collateral attack is time barred unless his J&S is invalid on its face or meets one of the exceptions to the time bar listed in RCW 10.73.100. Fletcher does not raise any of those exceptions; he argues only that his J&S is facially invalid.

At the outset, both parties agree that on its face, Fletcher's J&S is inaccurate—it states the wrong offender score and the wrong standard range. But "[n]ot every error renders a judgment and sentence 'invalid.'" *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 135, 267 P.3d 324 (2011). So we must determine whether the facial *errors* in Fletcher's J&S amount to facial *invalidity*. A "mere 'technical misstatement that had no actual effect on the rights of the petitioner' does not establish facial invalidity." *In re Pers. Restraint of Toledo-Sotelo*, 176 Wn.2d 759, 767, 297 P.3d 51 (2013) (quoting *In re Pers. Restraint of McKiearnan*, 165 Wn.2d 777, 783, 203 P.3d 375 (2009)). But a sentence imposed in excess of the court's statutory authority does establish facial invalidity. *In re Pers. Restraint of Yates*, 180 Wn.2d 33, 38-39, 321 P.3d 1195 (2014) (quoting *Coats*, 173 Wn.2d at 135). Our case law supports Fletcher's argument that a sentence based on an offender score that was miscalculated dramatically upward is a sentence in excess of the court's authority that renders his J&S invalid on its face.

14

> A. A court acts without statutory authority when it imposes a sentence based on an upwardly miscalculated offender score, even if the defendant agrees to that sentence

In *In re Personal Restraint of Call*, 144 Wn.2d 315, 318-19, 28 P.3d 709 (2001), Call pleaded guilty to first degree robbery, second degree robbery, and second degree theft. The prosecutor and defense agreed that Call's offender score for sentencing purposes was "'9 plus, essentially a 10' on the two robbery convictions and 9 on the theft conviction." *Id.* at 319. This calculation of his offender score at 10 included two prior Texas convictions. *Id.* The prosecutor agreed to recommend a sentence "at the low end of the standard range based upon an offender score of 10, which the parties agreed was 129 to 171 months" on the first degree robbery conviction. *Id.* at 319-20 (footnote omitted). The prosecutor and defense jointly recommended that the court impose a 129-month sentence on that conviction, and the court did so. *Id.* at 320.

Call did not appeal. But he filed a timely PRP, arguing that his two prior Texas convictions should not have been included in his offender score calculation because they "washed out" under former RCW 9.94A.360(2) (1999) of the SRA. *Id.* The State responded that Call had invited any error by agreeing to the sentencing recommendation. *Id.* at 321. The Court of Appeals agreed with Call: it reversed and remanded for resentencing using a correct offender score of 8 rather than 10. *Id.*

This court affirmed. We held that Call had shown that he was unlawfully restrained because "[a] sentencing court acts without statutory authority under the SRA when it imposes a sentence based upon a miscalculated offender score." *Id.* at 332 (citing *State v. Roche*, 75 Wn. App. 500, 513, 878 P.2d 497 (1994) ("It is axiomatic that a sentencing court acts without statutory authority when it imposes a sentence based on a miscalculated offender score.")). *See also In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 568, 933 P.2d 1019 (1997) (holding, in a case not involving a negotiated plea agreement, that petitioner was unlawfully restrained "to the extent he was sentenced on the basis of an incorrect calculation of his offender score," since "[a] sentencing court acts without statutory authority under the [SRA] when it imposes a sentence based on a miscalculated offender score").

We squarely rejected the State's argument that Call was not entitled to relief "because the 129-month sentence he received still falls within the standard range for the lower offender score of 8—between 108 to 144 months—and therefore was within the authority of the trial court." *Call*, 144 Wn.2d at 333. We concluded that even though Call had agreed to the original recommended sentence, the sentencing court must be "afforded an opportunity to determine the appropriate sentence based upon accurate information used as a basis for calculating an offender score and in determining the correct sentence range under the SRA." *Id.*

*Call* dealt with a timely PRP, but its holding on this issue applies with equal force in Fletcher's case. A sentencing court enters an invalid J&S when it imposes a sentence without statutory authority. Imposition of a sentence based on an upwardly miscalculated offender score is an instance of a court acting in excess of its statutory authority—even where the defendant pled guilty and agreed to the prosecutor's recommended sentence and even where the original sentence fell within the standard range for the correct, lower offender score. *Id.* at 332-33. It necessarily follows that imposition of a sentence based on an upwardly miscalculated offender score renders a J&S invalid on its face.

*In re Personal Restraint of Goodwin*, 146 Wn.2d 861, 50 P.3d 618 (2002), supports this conclusion. Goodwin pleaded guilty to conspiracy to manufacture a controlled substance and unlawful possession of a firearm in the first degree. *Id.* at 864. But his plea statement and J&S—just like Fletcher's plea statement and J&S—had improperly based his offender score on washed out juvenile offenses. *Id.* at 864-65. Goodwin did not appeal but filed an arguably untimely PRP, stating that his J&S was invalid on its face and that he was entitled to be resentenced based on his proper offender score. *Id.*

This court agreed. We held that this error made the J&S invalid on its face. *Id.* at 866-67. We reaffirmed the holdings of *Call* and *Johnson* that a sentencing court "'acts without statutory authority . . . when it imposes a sentence based on a

17

miscalculated offender score.'" *Id.* at 868 (alteration in original) (quoting *Johnson*, 131 Wn.2d at 568), 873 (reaffirming "long-established precedent . . . that a sentence is excessive if based upon a miscalculated offender score (miscalculated upward)").[9] The State "appropriately concede[d]" that this error rendered Goodwin's J&S facially invalid, and this court accepted that concession. *Id.* at 865.

This court continued on to the issue of prejudice and, as discussed further below, ultimately found that there was a complete miscarriage of justice, entitling Goodwin to be resentenced based on his correct offender score. *Id.* at 877-78.

In another case decided shortly after *Goodwin*, we again concluded that a sentence—like Fletcher's—that was "improperly calculated using previously washed out juvenile offenses, is invalid on its face." *In re Pers. Restraint of LaChapelle*, 153 Wn.2d 1, 6, 100 P.3d 805 (2004) (citing *Goodwin*, 146 Wn.2d at 865-67). *Call*, *Goodwin*, and *LaChapelle* clearly support Fletcher's argument that his J&S is invalid on its face—*Goodwin* even addressed a factually

---

[9] *Goodwin* also discussed the State's argument that Goodwin waived a challenge to his offender score by agreeing to the criminal history listed on the statement of defendant on plea of guilty. *Id.* at 865. We rejected that argument and reaffirmed that a defendant can never "agree to punishment in excess of that which the Legislature has established" and thus cannot waive a challenge to a miscalculated offender score. *Id.* at 873-74. In doing so, *Goodwin* clarified a portion of *Call* that suggested that in some cases, a defendant could waive such a challenge. *Id.* at 872. That holding did not disturb the portion of *Call* discussed above; indeed, as stated, *Goodwin* reaffirmed *Call*'s holding that a sentence based on a miscalculated offender score is a sentence in excess of the court's authority. *Id.* at 873.

identical situation, that is, a J&S that improperly included washed out juvenile offenses that never should have been counted.

The State points to *Toledo-Sotelo*, 176 Wn.2d 759, to argue that an improperly calculated offender score does not invalidate a J&S. But that case is clearly distinguishable. Toledo-Sotelo was convicted by a jury of bail jumping and subsequently pleaded guilty to two counts of child molestation in the first degree. *Id.* at 762. Toledo-Sotelo filed an untimely PRP, arguing that his standard range was miscalculated because both the offender score and the seriousness level of the offenses were wrong. *Id.* at 763. This court held that the sentencing court calculated both the offender score and the seriousness level of the offenses incorrectly. But we noted that seemingly by coincidence, the trial court had sentenced Toledo-Sotelo in the middle of what the properly calculated standard range should have been. *Id.* at 767. So, although the J&S technically misstated the standard range, the sentencing court sentenced Toledo-Sotelo to a statutorily authorized sentence. *Id.* at 768. This court held that "a mere 'technical misstatement that had no actual effect on the rights of the petitioner' does not establish facial invalidity." *Id.* at 767 (quoting *McKiearnan*, 165 Wn.2d at 783).

The court in *Toledo-Sotelo* did not, however, overrule *Goodwin*. It distinguished *Goodwin* on the ground that the *Goodwin* offender score was based on washed out juvenile offenses, resulting in an offender score and standard range

19

being miscalculated upward. *Id.* at 768. The *Toledo-Sotelo* court stated that Toledo-Sotelo's situation was different because "not only was the offender score actually miscalculated *downward* (from 4 to 3), but the sentencing court arrived at the correct sentencing range despite the error. There is nothing to suggest that the trial court would have sentenced Toledo-Sotelo differently if it had had the proper offender score (4) and seriousness level (X) at sentencing." *Id.* at 768-69.

Thus, *Toledo-Sotelo* is easily distinguishable from this case. Fletcher's sentence was incorrectly based on washed out juvenile adjudications that led to an incorrect offender score and standard range. The incorrect score and range were incorrectly high, not incorrectly low, and the magnitude of the error was startling. Fletcher's original J&S reflects a standard range for assault that is more than *three times* the standard range actually permitted by the SRA.

In other words, the errors in Fletcher's case mattered. As a result, *Goodwin*—which involved washed out juvenile adjudications and incorrectly high offender scores and ranges—is much more on point than *Toledo-Sotelo*—which involved completely different errors that had no effect on the actual sentence. Moreover, the Court of Appeals, this court's commissioner, the superior court, and even the State (at one time) have all indicated that Fletcher's J&S is *not* facially valid due to the extreme miscalculation of his offender score and standard range. *See Fletcher*, 19 Wn. App. 2d at 572-78; Ruling Staying Resentencing, *In re Pers. Restraint of Fletcher*,

No. 101144-0, at 2-3 (Wash. Aug. 15, 2022); CP at 236 (superior court memorandum decision), 165 ("Previously the State has held the position that . . . assuming Mr. Fletcher's offender score was incorrect, his judgment and sentence was invalid on its face, and therefore he was not time barred.").

A sentencing court "acts without statutory authority" when it imposes a sentence based on an offender score that was miscalculated upward. *Goodwin*, 146 Wn.2d at 868; *Call*, 144 Wn.2d at 332; *Johnson*, 131 Wn.2d at 569. A J&S is invalid on its face when it reflects a sentence imposed without statutory authority. *Yates*, 180 Wn.2d 33. Thus, our precedent strongly supports Fletcher's argument that his J&S is invalid on its face due to its obvious, substantial, nontechnical offender score and standard range errors.

> B. Fletcher's stipulation to an exceptional sentence does not change this result; the sentencing court must know the correct standard range to calculate an exceptional sentence above that range in a fair and statutorily authorized manner

To be sure, Fletcher stipulated that "the prosecutor will recommend an exceptional sentence/ incarceration of 84 months on Count 1 (with a 3 year deadly weapon enhancement), 41 months on Count 2 to run concurrent, for a total of 10 years." CP at 14.

Our case law certainly permits Fletcher to do that: a defendant can stipulate to the imposition of an exceptional sentence as part of a valid plea agreement. *In re*

*Pers. Restraint of Breedlove*, 138 Wn.2d 298, 310, 979 P.2d 417 (1999). But the stipulation is not binding—the sentencing judge accepts it only if that court "finds that the sentence is consistent with the purposes of the SRA." *Id.*; RCW 9.94A.535(2)(a).

So stipulation or not, the sentencing judge remains the one responsible for deciding whether to depart from the standard range and, if so, by how much; and the sentencing judge must make sure that any departure from the standard range is justified by a "substantial and compelling reason" and is "consistent with the purposes of the SRA." *Breedlove*, 138 Wn.2d at 310.

In Fletcher's case, the errors in his offender score meant that the original sentencing judge was completely misinformed about the standard range. Therefore, the original sentencing judge could not possibly carry out their SRA-*Breedlove* duty to determine whether an exceptional sentence comports with the SRA and whether substantial and compelling reasons support the extent of any departure from the SRA standard range.

Other decisions from this court confirm this. In *State v. Parker*, this court held that the sentencing court committed reversible error by failing to properly calculate the standard range before imposing an exceptional sentence. 132 Wn.2d 182, 184, 937 P.2d 575 (1997). A jury convicted Parker of one count of first degree rape of a child and two counts of first degree child molestation, but the jury did not

specify the date within the five-year charging period on which the acts occurred. *Id.* at 185. The date mattered because the legislature significantly increased the standard ranges for both crimes during the charging period, and Parker was sentenced based on the new, amended, higher standard ranges that covered only a portion of the charging period. *Id*. The sentencing court imposed a sentence at the high end of the new and harsher standard range for both offenses and then ran the sentences consecutively as an exceptional sentence. *Id.* at 185-86.

Our court held that "when imposing an exceptional sentence the court must first consider the presumptive punishment as legislatively determined for an ordinary commission of the crime before it may adjust it up or down to account for the compelling nature of the aggravating or mitigating circumstances of the particular case." *Id.* at 187. We reasoned that "[a]n exceptional sentence is exceptional because it differs from the underlying presumptive sentence." *Id.* at 188 (citing *State v. Ritchie*, 126 Wn.2d 388, 397, 894 P.2d 1308 (1995)). Therefore, the sentencing court must first calculate the correct standard range before imposing an exceptional sentence above that range. *Id.* We concluded that the sentencing court committed reversible error and remanded the case for resentencing based on the proper sentencing ranges. *Id.* at 193.

The facts in *Parker* are certainly different from the facts in *Fletcher*: Parker's claim was decided on appeal rather than in a PRP, it followed a jury trial rather than

a guilty plea, and the standard range miscalculation was not based on an offender score error but on a different legal error. But *Parker* correctly recognizes that under the SRA, the sentencing court has a statutory duty to independently determine whether to impose an exceptional sentence and how far above the standard range it should depart—decisions that *must* be informed by the correct offender score and standard range. *Id.* at 187.

The Court of Appeals came to the same conclusion in *State v. Brown*, 60 Wn. App. 60, 70, 802 P.2d 803 (1990). Brown was convicted of assault in the second degree following a jury trial, and the court imposed an exceptional sentence of 90 months. *Id.* at 63-64. The trial court specifically stated that the standard range was irrelevant because it was sentencing Brown to the amount of time that would keep him incarcerated until the victim (his son) reached the age of majority. *Id.* at 64. The Court of Appeals reversed the superior court because it held that the standard range *must* matter:

> Failure to remand this case for an accurate determination of Brown's offender score would indicate to trial courts that they are free to impose any sentence not exceeding the statutory maximum, so long as appropriate aggravating factors are recited. This would subvert the whole determinate sentencing scheme. In addition, it would be impossible for an appellate court to review whether an exceptional sentence was clearly excessive, if it were not known what the standard range sentence would have been.

*Id.* at 70.

These decisions show that determining the proper offender score and standard range is more than a minor procedural task—even when the court imposes an exceptional sentence. That offender score and its resulting standard range must inform the sentencing court's decision about whether it should depart above the statutorily mandated range and, if so, how far. As the *Brown* court stated when it reversed the exceptional sentence in that case, "It is obvious from the wording of the [SRA] that the sentencing court must first determine the standard range before deciding to impose an exceptional sentence." *Id.* at 69 (quoting RCW 9.94A.120).

Our PRP cases similarly recognize that a defendant's stipulation to an exceptional sentence does not automatically mean the J&S is valid on its face. In *In re Personal Restraint of West*, in exchange for a reduction from first degree robbery to first degree theft, West agreed to serve an exceptional 10-year sentence. 154 Wn.2d 204, 206, 110 P.3d 1122 (2005). "As part of her plea bargain, West also signed a waiver in which she agreed to serve the full 10-year sentence and requested that the Department of Corrections . . . not make any calculation or application of earned early release time." *Id*. The sentencing judge agreed and "made a handwritten notation on the [J&S, stating] that West stipulated to 10 years['] flat time with no earned early release." *Id*. at 206-07.

West later filed an arguably untimely PRP, arguing that the handwritten notation made the J&S facially invalid because the superior court lacked the power

to prohibit earned early release time. *Id.* at 207. This court agreed. We held that the superior court had no power to grant or restrict earned early release time and therefore the "[i]mposition of a sentence that is not authorized by the [SRA] is a fundamental defect which justifies collateral relief." *Id.* at 212-13 (citing *Breedlove*, 138 Wn.2d at 304). We explained that even though West had stipulated to an exceptional sentence and had agreed to the 10 years of flat time, "the handwritten notation on West's sentence constitutes a fundamental defect justifying collateral relief because *the sentence exceeds the sentencing court's statutory authority and the defect is not cured by the fact that West agreed to the limitation of her earned early release time as part of her plea bargain*." *Id.* at 214-15 (emphasis added). *West* again shows that a defendant cannot waive all statutory or other sentencing requirements by agreeing to an exceptional sentence.

The State cites *In re Personal Restraint of Flippo*, 187 Wn.2d 106, 385 P.3d 128 (2016), to support its argument that Fletcher's J&S is facially valid. In *Flippo*, this court held that the J&S was facially valid even though the trial court failed to perform a statutorily mandated individualized inquiry into Flippo's ability to pay discretionary legal financial obligations (LFOs). *Id.* at 108. We reasoned that the trial court had the substantive authority to impose discretionary LFOs but failed to follow the procedural requirement of performing an individualized inquiry into ability to pay. We held that this procedural failure did not invalidate the J&S, so

26

Flippo's PRP was untimely. *Id.* at 110-11. The State argues that the error in Fletcher's J&S is analogous to the error in *Flippo* and, hence, that Fletcher's PRP should be also be dismissed as untimely. State's Resp. to PRP at 10-11.

We disagree. *Flippo* did not disturb the holdings and analysis in *Parker*, *West*, and the other decisions discussed above, recognizing that the sentencing court must know the proper offender score and standard range before it can impose an exceptional sentence above the standard range, even where the parties offer a stipulation in support of a particular exceptional sentence. *Flippo* was not dealing with an exceptional sentence, or even a stipulation, at all.

The SRA is designed to "make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences." RCW 9.94A.010. The SRA takes two factors into consideration in determining the standard range: the seriousness of the offense and the offender's criminal history or offender score. RCW 9.94A.510. "The court may impose a sentence outside the standard sentence range for an offense"—but it must know the proper sentence range before it can know if and how to depart. RCW 9.94A.535.

Here, Fletcher's offender score unlawfully included prior juvenile adjudications, resulting in an egregious miscalculation of the standard sentence range in his original J&S. When the resentencing court considered the correct

offender score and standard range, Fletcher's term of confinement was reduced from an exceptional sentence of 120 months to a standard range sentence of 77 months.

Based on this record, the serious errors in Fletcher's original J&S clearly *did* have an "actual effect on the rights of the petitioner." *McKiearnan*, 165 Wn.2d at 783. As a result, Fletcher's J&S is facially invalid and so his PRP is timely. Next, we address whether Fletcher has shown sufficient prejudice to warrant the relief he requests. We conclude that he has.

II.     Fletcher has shown sufficient prejudice to support relief

After overcoming the time bar, a petitioner "must show either that he or she was actually and substantially prejudiced by constitutional error or that his or her trial suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice." *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013) (citing *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007); *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-12, 792 P.2d 506 (1990)). The SRA errors on the face of the J&S in this case are statutory violations, not constitutional ones. We therefore apply the nonconstitutional "complete miscarriage of justice" standard. *State v. Chambers*, 176 Wn.2d 573, 584, 293 P.3d 1185 (2013) (citing *Goodwin*, 146 Wn.2d at 876).

Under our precedent, imposition of a sentence based on an incorrect offender score that produces a standard range that is far higher than it should have been constitutes a complete miscarriage of justice. In *Goodwin*, the defendant pleaded guilty but then filed a PRP challenging his agreed (nonexceptional) sentence because it was based on an improperly calculated offender score. This court held that even though Goodwin had agreed to his sentence, he had still shown a complete miscarriage of justice because "a sentence that is based upon an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice." *Goodwin*, 146 Wn.2d at 868 (citing *Johnson*, 131 Wn.2d at 569).

Likewise, in *Call*, the petitioner agreed to a 129-month sentence that both parties believed was on the "low end" of the presumptive sentencing range (129 to 171 months) based on an offender score of 10. But Call's correct offender score was really 8, which produces a standard sentencing range of 108 to 144 months. We held that "incorrect calculation of an offender score constitutes a fundamental defect in sentencing resulting in a miscarriage of justice which requires relief" in a PRP—even though Call's 129-month sentence based on the incorrect offender score fell within the sentencing range based on his correct offender score. 144 Wn.2d at 333.

Similarly, in *West*, this court held that the petitioner had shown a complete miscarriage of justice because the J&S showed that the trial court imposed a

sentence that purported to bar West from earning early release time. 154 Wn.2d at 214-16. The problem was that the sentencing court lacked statutory authority to do so, even if the defendant stipulated to such an arrangement as an exceptional sentence. This court therefore granted West relief—even though she had stipulated to the bar on earned early release time as an exceptional sentence. *Id*. Thus, *Goodwin*, *Call*, and *West* indicate that Fletcher suffered a complete miscarriage of justice.

The State points to two cases to support its conclusion to the contrary. First, the State points out that in *Chambers*, the defendant pleaded guilty, agreed to an exceptional sentence, and got the exact sentence he bargained for. State's Resp. to PRP at 19-20. The trial court, however, failed to enter findings of fact to support that sentence. We nevertheless affirmed. *Chambers*, 176 Wn.2d 573. We ruled that this minor procedural error did not entitle Chambers to resentencing. 176 Wn.2d at 587. But we held only that the "failure of the trial judge to check the exceptional sentence box and enter a finding of fact does not require resentencing," not that the failure of the trial judge to correctly calculate the offender score and standard range survives a collateral challenge. *Id.* We explained that the procedural failure to check a box, which did not go to the heart of the agreed sentence, did not constitute a miscarriage of justice. *Id.* Second, in *Finstad*, the trial court failed to enter the proper findings to support its decision to run the sentences consecutively. 177

Wn.2d 501. But it did not miscalculate the offender score or drastically miscalculate the standard range. On review, we treated this error as a minor procedural defect that did not amount to a complete miscarriage of justice and did not invalidate the agreed sentence. *Id.* at 509-11.

In *Chambers* and *Finstad*, as in this case, the trial court imposed an exceptional sentence. But in *Chambers* and *Finstad*, unlike in this case, the trial court based its sentence on proper sentencing calculations, not dramatically incorrect sentencing calculations. And in those cases, the trial court's mistakes had no impact on its sentencing calculations or its decision about the length of the sentence. In Fletcher's case, in contrast, the exceptional sentence was based on improper sentencing calculations, the mistake had a dramatic impact on the standard sentencing range, and there is a high probability that the mistake affected the original sentence. It is noteworthy that the resentencing court, faced with correct information, imposed a far lower sentence than the original sentencing court, which was using incorrect information.

Therefore, we remand for a resentencing hearing, where both parties may present evidence and argument for the appropriate sentence based on Fletcher's correct offender score, the terms of the plea agreement, and the purposes of the

SRA.[10] There is no other way for the superior court to fulfill its independent statutory duty to impose a lawful sentence that is consistent with the ends of justice.

The State appears to argue that a resentencing hearing would not change the outcome in this case. According to the State, "the parties had agreed to recommend 120 months, without regard to the standard range," and Fletcher must make the same recommendation when he is resentenced. Resp't's Suppl. Br. at 9. The State is certainly correct that Fletcher will be bound by the terms of his plea agreement at his resentencing hearing but, as discussed above, the plea agreement did *not* require Fletcher to agree with the prosecutor's recommendation. Instead, Fletcher "agree[d] there are substantial and compelling reasons for an exceptional sentence in this case," and he recited the exceptional sentence recommendation "[t]he *prosecuting attorney* will make." CP at 19, 14 (emphasis added and boldface omitted). Defense counsel joined the State's recommendation at Fletcher's original sentencing hearing, but

---

[10] The purposes of the SRA are to

> (1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
> (2) Promote respect for the law by providing punishment which is just;
> (3) Be commensurate with the punishment imposed on others committing similar offenses;
> (4) Protect the public;
> (5) Offer the offender an opportunity to improve himself or herself;
> (6) Make frugal use of the state's and local governments' resources; and
> (7) Reduce the risk of reoffending by offenders in the community.

RCW 9.94A.010.

nothing in the plea agreement required him to do so. *See* VRP (Feb. 23, 2016) at 14-19.

Thus, at resentencing, Fletcher will be bound to his stipulation that an exceptional sentence is legally justified. However, nothing in the plea agreement prohibits him from seeking a different result. Ultimately, the appropriate sentence must be determined by the independent judgment of the resentencing court in accordance with the SRA.

Fletcher has shown that the sentencing calculation errors apparent on the face of his J&S resulted in a complete miscarriage of justice. He is therefore entitled to his requested relief.[11]

CONCLUSION

Fletcher's J&S shows that his offender score improperly included washed out juvenile offenses, which produced a standard sentence range that was significantly higher than it should have been. A sentencing court exceeds its statutory authority under the SRA when it imposes a sentence based on such a

---

[11] Fletcher's PRP asks that he be resentenced. Pers. Restraint Pet., *In re Pers. Restraint of Fletcher*, No. 101137-7, at 1 (Wash. Aug. 2, 2022) But his supplemental brief seeks "to reinstate the 77-month sentence" that was imposed at his first resentencing.  Pet'r's Suppl. Br. at 19. We remand for resentencing because Fletcher cites no authority allowing this court to "reinstate" a sentence that was reversed on appeal after the mandate has issued. However, at resentencing, Fletcher is free to seek the 77-month modified sentence he has already served, in accordance with the SRA's purpose to "[m]ake frugal use of the state's and local governments' resources." RCW 9.94A.010(6).

dramatically miscalculated standard range. *Goodwin*, 146 Wn.2d at 868 (quoting *Johnson*, 131 Wn.2d at 568); *Call*, 144 Wn.2d at 332. His J&S is therefore invalid on its face, and his PRP challenging those errors is timely.

His PRP is also meritorious. A defendant's offender score and standard range are essential pieces of data that drive both plea negotiations and sentencing decisions. Fletcher's dramatically miscalculated offender score and improperly high standard sentencing range deprived the original sentencing court of that essential data. Fletcher's sentence, based on such significant sentencing calculation errors, "is a fundamental defect that inherently results in a miscarriage of justice." *Goodwin*, 146 Wn.2d at 868.

We grant Fletcher's PRP and remand to the trial court for resentencing using the correct offender score and the correct standard range.

Gordon McCloud, J.

WE CONCUR:

Johnson, J.

Montoya-Lewis, J.

Owens, J.

Rumbaugh, J.P.T.

No. 101144-0

STEPHENS, J. (dissenting)—Respect for the finality of judgments is a cornerstone of our legal system. While we strive to avoid errors, and the appellate process serves to correct mistakes that are timely identified, until today we have carefully circumscribed the circumstances under which a final judgment and sentence may be reopened. The majority rewrites our precedent by asserting that a facial invalidity exists whenever a sentencing court commits a "serious error" in calculating a sentence. Majority at 18, 26. The error the majority identifies is a miscalculated offender score resulting in an incorrect standard range calculation, and it asserts that this error automatically invalidates a judgment and sentence even when the defendant bargains for and receives an exceptional sentence above the standard range. Nowhere in our precedent have we previously suggested that the size of a scoring miscalculation is sufficient grounds to declare a final judgment and sentence facially invalid. Instead, we have consistently held that the dispositive question is whether the judgment and sentence shows, on its face, that the court acted outside its sentencing authority by imposing a sentence that is not merely erroneous but unlawful and invalid. The impact of the majority's holding will be far reaching,

requiring courts to reopen final judgments that remain valid and lawful despite a scoring error.[1] Moreover, it is misleading to measure the magnitude of the scoring error by reference to a standard range that resulted from a negotiated plea to lesser charges where the defendant agreed to an exceptional sentence.

I would hold that Olajide Adel Fletcher's personal restraint petition is time barred because, although the court incorrectly included certain juvenile convictions when it calculated his offender score, the sentencing court did not exceed its authority by imposing the exceptional sentence he agreed to. Simply put, his judgment and sentence is facially valid despite the mistaken offender score and, at this point in time, finality must be respected. Under long-standing precedent defining the limited circumstances under which a final judgment is facially invalid, Fletcher's petition must be dismissed. Therefore, I respectfully dissent.

## ANALYSIS

"Personal restraint petitions are modern versions of ancient writs . . . that allow

---

[1] Consider, for example, the number of sentences—going back decades—that contain criminal history points invalidated by this court's decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). Under the majority's analysis, the inclusion of a simple drug possession conviction in a person's offender score could be deemed a "serious error" insofar as the court incorrectly calculated one of only two factors that determine the standard range. And, based on the majority's conclusion that even an agreed exceptional sentence is invalid if the standard range was not properly calculated, the error would require resentencing in most situations.

petitioners to challenge the lawfulness of confinement." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 128, 267 P.3d 324 (2011) (citing *Toliver v. Olsen*, 109 Wn.2d 607, 609-11, 746 P.2d 809 (1987)). Personal restraint petitions are an extraordinary remedy, and a petitioner must meet a high bar before this court grants relief. *Id.* at 132-33. The high bar reflects, in part, our respect for settled judgments. *See In re Pers. Restraint of Fero*, 190 Wn.2d 1, 14-15, 409 P.3d 214 (2018) (citing *Coats*, 173 Wn.2d at 132); *see also In re Pers. Restraint of Hews*, 99 Wn.2d 80, 86, 660 P.2d 263 (1983) ("[C]ollateral relief undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders.").

The legislature grants limited relief by way of a personal restraint petition by imposing a one-year limit on when an individual may file such a petition. RCW 10.73.090(1) ("No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final."). If a petition is filed more than one year after a judgment and sentence becomes final, the petition must be dismissed unless the petitioner shows that the judgment and sentence is invalid on its face, was entered by a court of incompetent jurisdiction, or falls under one of the RCW 10.73.100 exceptions. While procedurally harsh, the one-year time bar "strik[es] a balance between the interests in error-free trials and appeals and the interest in the finality of judgments."

*State v. Wade*, 133 Wn. App. 855, 870, 138 P.3d 168 (2006) (citing *Shumway v. Payne*, 136 Wn.2d 383, 399, 964 P.2d 349 (1998)).

Fletcher filed his personal restraint petition more than one year after his judgment and sentence became final. Nevertheless, he argues his petition must be considered on its merits, despite the time bar, because of washed-out juvenile convictions included in his criminal history score and a resulting miscalculated standard sentencing range. He asserts that the offender score error resulted in a complete miscarriage of justice, notwithstanding that the sentencing court entered a statutorily authorized exceptional sentence to the term of years identified in his plea agreement. Because the judgment and sentence remains valid and lawful despite the scoring error, I would find his petition time barred.

I. <u>A judgment and sentence is invalid on its face only when a sentencing court imposes a sentence that exceeds its statutory authority and is unlawful</u>

Our standards for collateral review recognize that mistakes are inevitable, and we have consistently emphasized that "[n]ot every error renders a judgment and sentence 'invalid.'" *Coats*, 173 Wn.2d at 135 (quoting *In re Pers. Restraint of McKiearnan*, 165 Wn.2d 777, 783, 203 P.3d 375 (2009)). Because personal restraint petitions are designed to challenge the *legality* of confinement, "we require more than an error that 'invite[s] the court to exceed its authority'; the sentencing court

must actually pass down a sentence not authorized" by law. *In re Pers. Restraint of Toledo-Sotelo*, 176 Wn.2d 759, 767, 297 P.3d 51 (2013) (alteration in original) (quoting *Coats*, 173 Wn.2d at 136). "Only where the judgment and sentence was entered by a court without the authority to do so have we held the judgment invalid." *Coats*, 173 Wn.2d at 136.

A court enters an invalid judgment and sentence when it "has in fact exceeded its statutory authority." *Id.* at 135. It is not enough that the judgment and sentence evidences a mistake or even that a miscalculated standard range *invited* the court to impose an authorized sentence; if the sentence imposed remains valid, it is not facially invalid. *Toledo-Sotelo*, 176 Wn.2d at 767-70 (holding the judgment and sentence was valid because a statutorily authorized sentence was imposed, despite several errors in calculating the sentencing range).

What, then, renders a judgment and sentence invalid on its face? One way a court exceeds its statutory authority is by sentencing an individual for a crime that never existed. For example, the petitioner in *In re Personal Restraint of Thompson* pleaded guilty to one count of first degree rape of a child though the statute creating that crime "was not enacted until 1988, nearly two years after the conduct occurred." 141 Wn.2d 712, 716, 10 P.3d 380 (2000). Because the crime did not exist when Thompson committed the act leading to the charge, we found his judgment and

sentence facially invalid. *Id.* at 719; *see also In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 100 P.3d 801 (2004) (petitions were not time barred because second degree felony murder with assault as the predicate offense did not exist in statute). Similarly, we have found a judgment and sentence invalid where a court sentenced a petitioner to crimes charged after the statute of limitation had lapsed. *In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 354, 5 P.3d 1240 (2000).

A sentencing court also exceeds its statutory authority by imposing a sentence not authorized by law. This occurred in *In re Personal Restraint of Snively*, 180 Wn.2d 28, 30-31, 320 P.3d 1107 (2014), where the court sentenced Snively to two years of community placement on his indecent liberties and first degree child molestation charges. We found his judgment and sentence facially invalid because "[t]he trial court . . . lacked statutory authority to impose community placement on the indecent liberties conviction." *Id.* at 32. *See also In re Pers. Restraint of Yates*, 180 Wn.2d 33, 321 P.3d 1195 (2014) (petition was not time barred because court lacked authority to impose a 20-year determinant sentence for first degree murder); *In re Pers. Restraint of West*, 154 Wn.2d 204, 110 P.3d 1122 (2005) (judgment and sentence was facially invalid because superior court, without statutory authority, restricted early release time).

In contrast, miscalculations of an offender score or seriousness level will not render a judgment and sentence invalid when the ultimate sentence remains

statutorily authorized despite the error. *See Toledo-Sotelo*, 176 Wn.2d at 761 (holding that despite a miscalculation of the defendant's offender score, the judgment and sentence was facially valid because the sentencing court "coincidentally" arrived at a sentence within the correctly calculated range); *see also In re Pers. Restraint of Richardson*, 200 Wn.2d 845, 525 P.3d 939 (2022) (miscalculation of offender score did not render judgment and sentence facially invalid where the standard range to which defendant was sentenced remained unchanged).

Even in the plea context, an error affecting a plea does not per se reflect a facial invalidity. For example, in *In re Personal Restraint of Hemenway*, the petitioner pleaded guilty to first degree child molestation, but his plea failed to mention the mandatory minimum two years of community placement as a consequence of his conviction. 147 Wn.2d 529, 530, 55 P.3d 615 (2002). Hemenway filed a personal restraint petition five years after his judgment and sentence became final, arguing his petition was timely because his plea misinformed him of the community placement consequence, thus making his judgment and sentence facially invalid. *Id.* at 531. This court disagreed, reasoning that his judgment and sentence reflected the community placement consequence and the court had authority to impose such placement. *Id.* at 532.

Our precedent appropriately focuses on the ultimate validity of a sentence

rather than errors in the process of determining a sentence. *In re Pers. Restraint of Flippo*, 187 Wn.2d 106, 385 P.3d 128 (2016), underscores this point. There, we found a judgment and sentence valid on its face even though the court failed to meet its statutory duty to conduct an individualized assessment of the defendant's ability to pay legal financial obligations (LFOs). *Id.* at 110-11. We explained that while a sentencing court has "the duty to engage in an individualized financial inquiry regarding a defendant's present and future likely ability to pay" discretionary LFOs, only the "specific grant of authority to impose discretionary LFOs . . . has any bearing on the question of facial validity." *Id.* The statutory duty to conduct "an individualized inquiry prior to imposing discretionary LFOs . . . does not detract from a court's substantive authority to do so." *Id.* (citing *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015)). Because the court had authority to impose the discretionary LFOs, it did not matter that the court had failed to conduct the individualized assessment.

In sum, our precedent is clear that the court's authority to impose a sentence and the legality of the resulting judgment and sentence are the deciding factors when determining facial invalidity. The value of finality prevails over error correction when, despite even significant mistakes, a judgment and sentence is lawful and within the sentencing court's statutory authority. As I next explain, the majority's new "startling" error test deviates dramatically from this standard and will result in

reopening lawful, authorized final sentences.

II.     An incorrectly calculated offender score or standard sentencing range does not *per se* render a judgment and sentence invalid

In finding Fletcher's petition timely, the majority creates what amounts to a new, nonstatutory exception to the time bar, applicable when a judgment and sentence contains an offender score error of "startling" magnitude. Majority at 20. In the context of this case, the majority holds that an "upwardly miscalculated offender score" invalidates a J&S on its face even where the sentence imposed is an agreed-to exceptional sentence. *Id* at 17.

This new time bar exception has no foundation in our facial invalidity precedent, and the majority relies instead on direct appeal cases concerned with the appropriate steps a court must follow under the Sentencing Reform Act (SRA)[2]. It highlights the significant difference the inclusion of Fletcher's washed-out juvenile convictions made in calculating the standard sentencing range for the lesser charges he pleaded to. Starting from the lower standard range, the majority concludes that the gap between this range and the exceptional sentence Fletcher agreed to in his guilty plea is of significant magnitude to invalidate the sentence. Majority at 20. The majority's premise appears to be that the miscalculation invited the court to impose an exceptional sentence it did not mean to impose (i.e., a much higher

---

[2] Sentencing Reform Act of 1981, ch. 9.94A RCW.

upward departure), and that we must insist that courts get the steps right in calculating the standard range under the SRA because an exceptional sentence necessarily starts with knowing the standard range. Majority at 17-21.

The majority's new rule about when a scoring error "mattered" conflates the strict principles of personal restraint petition procedure with a post hoc analysis akin to harmless error on direct appeal. Majority at 20. It does so by focusing not on the court's authority to impose the challenged sentence but on the size of the gap between the standard range (on the lesser charges) and the agreed-to exceptional sentence. This approach reflects a dramatic departure from our precedent, which has focused instead on whether the sentence the court imposed was authorized and lawful—as it was here. Despite the majority's protestations, the error it identifies in Fletcher's sentence is a procedural calculation error, and the new standard it applies essentially renders a judgment and sentence facially invalid whenever an offender score or standard sentencing range is miscalculated too high.

I acknowledge that our case law has not been entirely clear, and sometimes conflicts, on when an incorrectly calculated offender score or standard range renders a judgment and sentence invalid on its face. However, as discussed above, it is clear that any error must result in an unauthorized, unlawful sentence in order to overcome the one-year time bar.

The majority points to *In re Personal Restraint of Goodwin*, 146 Wn.2d 861, 50 P.3d 618 (2002), to assert that facial invalidity can be shown based on an incorrectly calculated offender score, but the case does not stand for that proposition. Majority at 17-18. In that case, Goodwin pleaded guilty to conspiracy to manufacture a controlled substance and unlawful possession of a firearm in the first degree. *Goodwin*, 146 Wn.2d at 864. His plea showed a standard range calculated by using an offender score of 4, which incorrectly included washed-out juvenile convictions. *Id.* Goodwin filed a personal restraint petition, seeking resentencing because of the miscalculated offender score. *Id.* at 863. Importantly, the State conceded that his judgment and sentence appeared facially invalid, and we agreed that his petition was not time barred without analyzing the question. *Id.* at 865-66.

*Goodwin* is inapplicable to this case for two reasons. First, due to the State's concession, *Goodwin* does not address facial invalidity with respect to the time bar. *Id.*; *see Berschauer/Phillips Constr. Co. v. Seattle School Dist. No. 1*, 124 Wn.2d 816, 824, 881 P.2d 986 (1994) ("In cases where a legal theory is not discussed in the opinion, that case is not controlling on a future case where the legal theory is properly raised."). Second, unlike here, the sentencing court in *Goodwin* imposed a sentence in excess of the properly calculated standard range, did not make any findings required for imposing an exceptional sentence, and thus did not have authority to impose the sentence. 146 Wn.2d. at 876-77 (citing *In re Pers. Restraint*

11

*of Johnson*, 131 Wn.2d 558, 568-69, 933 P.2d 1019 (1997)).[3]

The majority's reliance on *In re Personal Restraint of LaChapelle*, 153 Wn.2d 1, 100 P.3d 805 (2004), is unpersuasive for similar reasons. There, the sentencing court had used previously washed-out juvenile convictions to calculate the petitioners' offender scores and standard sentencing ranges. *Id.* at 6. Without discussion, we cited to *Goodwin* and determined the petitioners had avoided the time bar because of the miscalculated offender score and standard sentence. *Id.* Reciting a single line from a case that provided no analysis does not make the rule well established, and I do not see how *Goodwin* and *LaChapelle* "clearly support Fletcher's argument that his J&S is invalid on its face." Majority at 18.

*Toledo-Sotelo* highlights why a miscalculated offender score and sentencing range does not *per se* establish facial invalidity. There, the sentencing court had miscalculated Toledo-Sotelo's offender score and standard sentencing range.

---

[3] Fletcher also cites to *Johnson* to support his facial invalidity claim. Pet'r's Suppl. Br. at 10. In *Johnson*, we said, "A sentencing court acts without statutory authority under the [SRA] when it imposes a sentence based on a miscalculated offender score." 131 Wn.2d at 568. At first blush, one may think this implies any offender score miscalculation would invalidate a judgment and sentence on its face. But we made that statement when analyzing whether Johnson had established that he was unlawfully restrained, not whether his petition was time barred. *Id.* ("Johnson has established his restraint was unlawful to the extent he was sentenced on the basis of an incorrect calculation of his offender score."). Nevertheless, as I discuss below, the *Johnson* line of cases applies when the sentence is *based on* the incorrectly calculated offender score. That is not the case here, where Fletcher agreed to an exceptional sentence justified by the purposes of the SRA. His sentence was not based on the standard sentencing range.

12

*Toledo-Sotelo*, 176 Wn.2d at 763. Nevertheless, we held his judgment and sentence was valid because the court imposed a sentence within the middle of the properly calculated standard sentencing range. *Id.* at 768. We refused to find the judgment and sentence invalid because "for purposes of facial invalidity, we are interested in whether the sentencing range is accurately calculated. For an erroneous offender score to poison an otherwise accurate and statutorily authorized sentencing range would not advance any policy purpose articulated in RCW 9.94A.010." *Id.*

The majority distinguishes *Toledo-Sotelo* by arguing that the standard sentence range in that case was incorrectly calculated downward whereas here Fletcher's judgment and sentence is incorrectly calculated upward. "In other words, the errors in Fletcher's case mattered." Majority at 20. This distinction defeats the thesis of the majority. If any offender score or standard sentencing range error appearing on the face of the judgment and sentence renders it facially invalid (as the majority asserts), then it should not matter if the sentencing range and offender score were miscalculated upward or downward. *Toledo-Sotelo* is different from *Goodwin* and *LaChapelle* because the sentencing court in *Toledo-Sotelo* imposed a statutorily authorized sentence. *Toledo-Sotelo*, 176 Wn.2d at 769 ("[O]ur test is concerned with the facial validity of the *judgment and sentence*, not the process by which the sentencing court arrives at that judgment.").

Reading these cases together, it is clear that a sentencing court exceeds its

13

statutory authority when it imposes a sentence *based on* the miscalculated offender score and standard sentencing range. A sentence is "based on" the error when the judgment and sentence itself evidences the error. Said differently, it is not enough that the mistake *invited* the court to impose an erroneous sentence; the sentence itself must in fact be unauthorized by statute. *Id.* at 767. Two cases reinforce this proposition. First is *Coats*. In that case, the sentencing court misstated the maximum sentence on Coats's judgment and sentence for one of his three convictions. *Coats*, 173 Wn.2d at 133. We determined his judgment and sentence was valid on its face despite this error because Coats received a statutorily authorized sentence. *Id.* at 143. Second is *In re Personal Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014). Like Coats, Stockwell's judgment and sentence misstated the maximum sentence for his indecent liberties conviction. *Id.* at 591. This court concluded that despite this error, his judgment and sentence was valid because he received "a legal sentence both under the erroneous maximum and the correct legal maximum." *Id.* at 593.

In sum, to establish that a judgment and sentence is invalid on its face, the petitioner must show how his judgment and sentence evinces or rests on the miscalculated offender score. Here, Fletcher can show only a miscalculation of the standard range on the lesser charges he pleaded guilty to, not that his agreed-to exceptional sentence exceeded the sentencing court's authority. As discussed below,

14

the court had authority to impose his exceptional sentence, and the exceptional

sentence is authorized despite the offender score error because it comports with the

purposes of the SRA. Therefore, his judgment and sentence is not invalid on its face,

and we should not address his substantive claim of a miscarriage of justice.

    III.    <u>Fletcher's judgment and sentence is valid because the sentencing court
had authority to impose the agreed-to exceptional sentence that
complied with the purposes of the SRA</u>

The majority finds Fletcher's judgment and sentence invalid on its face

because the sentencing court did not have the correct standard range before imposing

an agreed-to exceptional sentence. To support this novel proposition, the majority

recites the rule from *In re Personal Restraint of Breedlove*, 138 Wn.2d 298, 979 P.2d

417 (1999), that a sentencing court must ensure an agreed-to exceptional sentence

complies with the purposes of the SRA and the interests of justice. Majority at 22

(quoting *Breedlove*, 138 Wn.2d at 310). The majority then pivots to a direct appeal

case, *State v. Parker*, 132 Wn.2d 182, 937 P.2d 575 (1997), to conclude that the

court's duty to comply with the SRA necessitates correctly calculating the standard

sentencing range in the course of imposing any sentence, including an exceptional

sentence above the standard range. Majority at 22-23 (quoting *Parker*, 132 Wn.2d

at 187). This has never been the standard for determining facial invalidity, as a closer

reading of the precedent demonstrates.

To start, the majority overreads *Breedlove*. The issue there was whether a defendant could agree to an exceptional sentence, not whether the ultimate sentence was unauthorized. *Breedlove*, 138 Wn.2d at 304. In confirming that a defendant may agree to an exceptional sentence, we noted that the SRA expressly "authorizes agreements which recommend sentences outside the standard sentencing range." *Id.* at 309 (citing RCW 9.94A.080(3)). However, we noted that the sentencing court is not bound to the stipulated sentence and it "must independently determine that the sentence imposed is appropriate." *Id.* "Where that sentence falls above or below the presumptive standard range, the reason for deviating from the presumptive range must be a 'substantial and compelling' reason, in light of the purposes of the SRA[,]" and "'[be] consistent with the interests of justice . . .'" *Id.* (quoting RCW 9.94A.090(1)). In short, *Breedlove* holds that a sentencing court can follow the parties' agreement but must find an agreed-to exceptional sentence to be consistent with the purposes of the SRA before imposing the sentence. *Id.*; *see also State v. Ermels*, 156 Wn.2d 528, 536, 131 P.3d 299 (2006) ("[A] stipulation to an exceptional sentence is enough, in and of itself, to constitute a substantial and compelling reason to justify an exceptional sentence, so long as the sentence is authorized by statute and the findings also show that the sentence is consistent with the goals of the [SRA].").

The majority misframes *Breedlove* as holding that a sentencing court cannot impose an exceptional sentence consistent with the SRA if the standard sentencing range has been miscalculated. Majority at 22. That point was not part of the holding in *Breedlove* because the issue had nothing to do with calculating the standard range but, rather, with the court's independent duty to find sufficient grounds for an exceptional sentence regardless of the parties' agreement. On collateral review, we have long recognized that SRA score miscalculations happen, and those mistakes do not per se render an exceptional sentence unauthorized. Indeed, parties often engage in so-called "charge bargaining" that lowers an offender's standard range in exchange for the defendant's agreement to a term of years well above that range, understanding that recommended term of years is not dependent on the specific standard range. And the sentencing court's obligation under *Breedlove* is to independently determine whether that ultimate exceptional sentence is justified by the facts of the case.

Lacking a collateral review case, the majority relies on *Parker*, a direct appeal case. In that case, the sentencing court miscalculated Parker's standard range upward in the course of imposing an exceptional sentence. *Parker*, 132 Wn.2d at 185. We recognized that under the SRA, the sentencing court "must first consider the presumptive punishment as legislatively determined for an ordinary commission of the crime before it may adjust it up or down to account for the compelling nature

17

of the aggravating or mitigating circumstances of the particular case." *Id.* at 187 (citing RCW 9.94A.390). Failure to do so constitutes legal error subject to review. *Id.* at 189. We reversed and remanded for resentencing because of the risk that affirming "would uphold a sentence which the sentencing judge *might not have imposed given correct information* and would defeat the purpose of the SRA." *Id.* at 190 (emphasis added).

There is an important distinction between a sentence that a court might not have imposed given the correct information and a sentence the court had no authority to impose. The former provides grounds for relief on direct appeal but the latter must be shown before a court can lift the time bar and consider a belated collateral attack. *Parker* might be applicable if Fletcher had filed a timely personal restraint petition. In fact, we applied *Parker* in that exact context in *In re Personal Restraint of Call*, 144 Wn.2d 315, 28 P.3d 709 (2001).[4] But we have never applied the legal error standard in *Parker* to determine when a final judgment and sentence is unauthorized and unlawful and therefore facially invalid.

---

[4] Call's offender score included convictions in Texas that had washed out, and the incorrectly high score resulted in an incorrectly high standard range. *Id.* at 318. We granted Call's *timely* personal restraint petition, citing *Parker* and noting that "[t]he sentencing court is obligated to calculate the correct offender score and determine the correct standard range before imposing a sentence. It is legal error subject to review when that is not done." *Id.* at 335. The majority erroneously extends this "legal error" standard beyond its context on the mistaken premise that such errors *automatically* result in a sentence that is not authorized by law.

The majority also relies on *West* to argue that Fletcher did not cure the error by agreeing to his exceptional sentence. Majority 25-26. *West* is distinguishable. There, the court accepted the petitioner's stipulated exceptional sentence of 10 years of confinement with no earned early release time. *West*, 154 Wn.2d at 206. West filed an untimely personal restraint petition, arguing that her judgment and sentence was invalid because the superior court had no authority to prohibit early release time. *Id.* at 207. We agreed, reasoning that "only the Department [of Corrections] has the authority to grant or deny earned early release time." *Id.* As a result, West's "sentence exceed[ed] the sentencing court's statutory authority and the defect [was] not cured by the fact that West agreed to the limitation of her earned early release time as part of her plea bargain." *Id.* at 214-15.

Unlike *West*, Fletcher agreed to a sentence the court was legally authorized to impose: 10 years of confinement. Clerk's Papers (CP) at 25. Consistent with its obligations under *Breedlove*, the sentencing court found that the proposed exceptional sentence comported with the purposes of the SRA. *Id.* Even if the court's miscalculation of Fletcher's offender score impacted its methodology for imposing the length of the sentence, that sentence remained authorized by law. This stands in contrast with the flawed portion of the sentence in *West*—not the 10-year term of confinement but the portion that attempted to limit West's earned early release time, a matter beyond the court's lawful authority. *West*, 154 Wn.2d at 214;

19

*see also supra* 5-6 (describing cases where court exceeded lawful sentencing authority). Fletcher's sentencing court did not act outside lawful sentencing authority; indeed, the term of confinement was agreed to by the parties and found by the court to comport with the SRA and the interests of justice. In the context of an untimely personal restraint petition, the offender score error alone is not enough to find facial invalidity.

The outcome in this case is controlled by the line of cases discussed above, which hold that miscalculations under the SRA do not per se render a judgment and sentence unauthorized. *See supra* at 6-8 (describing *Toledo-Sotelo* line of cases). When, as here, the exceptional sentence imposed remains within the court's sentencing authority, errors in the offender score or standard range do not render the final judgment invalid. Further, as the Chief Justice points out in his opinion, the fact that the defendant agreed to the sentence the court imposed matters. Concurrence in dissent (González, C.J.) at 2. It is telling that Fletcher's petition does not seek to withdraw from his plea agreement to lesser charges, nor does he deny that the 10-year confinement term was part of that agreement. Consistent with *Breedlove*, an agreed-to exceptional sentence is authorized so long as the court finds it meets the purposes of the SRA and serves the interests of justice. *Breedlove*, 138 Wn.2d at 310. That happened here.

CONCLUSION

The majority creates a new, nonstatutory standard for reopening a final judgment and sentence based on facial invalidity. Under the majority's rule, any error in the offender score (or standard sentencing range) will facially invalidate a judgment and sentence, regardless of the defendant's plea agreement and the sentencing court's findings that the sentence is justified. This wholesale departure from precedent is based on the faulty premise that legal errors in sentencing calculations necessarily render the resulting sentence unlawful and unauthorized. Given the number of final judgments that include a now invalid simple drug possession conviction in the defendant's criminal history score, the impact of today's decision will reach back decades and unnecessarily disrupt the balance between finality and protecting individuals from unlawful confinement. This balance is reflected in the carefully crafted time bar rules that govern personal restraint petitions, and we have—to date—respected the difference between an unauthorized, unlawful exercise of sentencing power and a merely erroneous judgment and sentence, which must be final after a point in time.

I would adhere to our long-standing precedent holding that a judgment and sentence is facially invalid for the purposes of avoiding the one-year time bar when the sentence is unauthorized by law. Fletcher's judgment and sentence remains valid despite the miscalculated offender score because the exceptional sentence—which

Fletcher agreed to in exchange for lesser charges—did not exceed the statutory

maximum and the sentencing court found the sentence to be in the interests of justice

and consistent with the purposes of the SRA. Fletcher's petition should be dismissed

as time barred and we should therefore not address the issue of prejudice.[5]

For this reason, I respectfully dissent.

Stephens, J.

Madsen, J.

---

[5] My insistence on adherence to our long-standing time bar rules should not be confused with taking a position on the merits of Fletcher's petition. It may be that the miscalculated offender score and standard sentencing range impacted the sentencing court's analysis, but that is merely a hypothesis. The errors may also have impacted plea negotiations, but Fletcher certainly does not ask to withdraw his plea. Wash. Sup. Ct. oral arg., *In re Pers. Restraint of Fletcher*, No. 101144-0 (May 18, 2023), at 16 min., 13 sec. to 16 min., 28 sec. *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/wasgington-state-supreme-court-2023051161/?eventID=2023051161. I also appreciate that this appeal comes after Fletcher has been released following resentencing, but that fact has no bearing on the threshold question of whether his final judgment and sentence should have been reopened at all. The limited circumstances under which courts will hear the merits of an untimely collateral attack must remain constrained and consistent, regardless of our perceived substantive merit of the petition before us.

No. 101144-0

GONZÁLEZ, C.J. (concurring in dissent)—Olajide Adel Fletcher bargained

for, and received, an exceptional sentence above the standard range in return for

the State's agreement to significantly reduce the original charges, to not file

additional charges, and to not file charges against his girlfriend. The trial court

accepted the stipulation and sentenced accordingly. Fletcher did not directly

appeal the calculation of the standard range and he did not challenge the

calculation in the form of a personal restraint petition within the one-year deadline

to do so. To proceed now, he must show that he meets an exception to the time bar.

He argues that the time bar does not apply to this case because his judgment and

sentence is facially invalid. It is not.

Had Fletcher not stipulated to an exceptional sentence above the otherwise

applicable standard range, I would concur with the majority that his judgment and

sentence is not valid. A long line of cases establishes that when a trial judge bases

a standard range sentence on an incorrect offender score, the judgment and

sentence is invalid and the petitioner, if prejudiced, is entitled to relief. *See In re*

*Pers. Restraint of LaChapelle*, 153 Wn.2d 1, 6, 100 P.3d 805 (2004); *In re Pers.*

*Restraint of Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002); *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 568, 933 P.2d 1019 (1997).

Based in part on those cases, this court held that a judgment and sentence is invalid if it shows the trial court exercised a power it did not have. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 135-36, 267 P.3d 324 (2011). The trial court, generally, does not have the power to depart upward from the standard sentencing range except based on facts charged and proved beyond a reasonable doubt or admitted by the defendant. *In re Pers. Restraint of Davis*, 188 Wn.2d 356, 368, 395 P.3d 998 (2017) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 485-86, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)); *Goodwin*, 146 Wn.2d at 868.

Here, the trial court *did* have the power to depart upward from the standard sentencing range and impose an exceptional sentence based on something that was not present in *Goodwin*, *Johnson*, or *LaChapelle*—the defendant's stipulation that an exceptional sentence was warranted. Clerk's Papers at 19; *see also State v. Hughes*, 154 Wn.2d 118, 126, 110 P.3d 192 (2005), *abrogated by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). Accordingly, the judgment and sentence does not show the trial court exercised a power it did not have. His challenge is time barred and must be dismissed on that basis alone. RCW 10.73.090, .100; *In re Pers. Restraint of Turay*, 150 Wn.2d 71, 85, 74 P.3d 1194 (2003). While courts do sometimes analyze prejudice to give due

2

consideration to the parties' arguments or to resolve arguments that might be renewed in a subsequent case, time barred collateral challenges can only be dismissed, regardless of whether there is prejudice. In the absence of an exception or exemption to the time bar, whether there was an error and whether that error was prejudicial is irrelevant to the result. A time barred petition can only be dismissed.

I also write because I am concerned courts have misunderstood *Coats* and its attempt to make sense of our facial invalidity collateral restraint jurisprudence. Based on a survey of cases concerning facial validity, *Coats* held that "we have found errors rendering a judgment invalid under RCW 10.73.090 only where a court has in fact exceeded its statutory authority in entering the judgment or sentence." 173 Wn.2d at 135. That was a description of the conditions that had been found sufficient to render a judgment or sentence not valid on its face. It did not purport to establish the rule for what was *necessary* to find a judgment not valid on its face.

Plainly, many errors that do not relate to sentences could render a judgment and sentence not valid on its face. For example, we would not uphold a court judgment as valid if it was signed by the county executive instead of a judge. Perhaps because we want a rule and *Coats* could be seen to provide one, subsequent cases have, without analysis, turned a statement about what was

sufficient into a rule about what is necessary. *See, e.g., In re Pers. Restraint of Toledo-Sotelo*, 176 Wn.2d 759, 767, 297 P.3d 51 (2013).

But *Coats* does not stand for the limited rule that has been assigned to it. Instead, *Coats* left open the possibility that other errors *could* render a judgment and sentence not valid on its face, upon a proper showing. Unfortunately, Fletcher has not meaningfully attempted to show that this is the type of error that renders his judgment and sentence not valid on its face. While I too am disturbed that this sentencing error has no remedy, the fact that the trial court was misinformed about a sentencing range that did not control the sentencing is not sufficient to render a judgment and sentence not valid on its face under existing precedent.

With these observations, I respectfully concur in dissent.

González, C.J.

Yu, J.

4