IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

RAYMOND JAY FEMLING,

Appellant.

No. 87065-3-I

DIVISION ONE

UNPUBLISHED OPINION

DÍAZ, J. — Following our Supreme Court's decision in State v. Blake, 197 Wn.2d 170, 186, 481 P.3d 521 (2021), a superior court resentenced Raymond Jay Femling, largely holding him to the original plea agreement, while giving him credit for the rehabilitation he had shown in prison. He argues that, pursuant to Blake, the court should not have counted a related bail jumping conviction in his offender score, nor should it have counted separately two of his convictions, which he claims constitute the same criminal conduct. Femling also argues the court lacked authority to impose an exceptional consecutive sentence and failed to exercise its discretion to impose a mitigated sentence. He also requests to strike the victim penalty assessment. Finding no error, we affirm, remanding this matter only so the court may strike the victim penalty assessment.

## I.     BACKGROUND

This case arises from the 2014 kidnapping and assault of James Braithwaite, and Femling's subsequent attempt to hire various persons to murder Braithwaite to prevent him from testifying.  The State charged Femling with eight crimes, including kidnapping in the first degree, robbery in the first degree, assault in the second degree, and three counts of solicitation to commit murder in the first degree.  In 2016, Femling pled guilty to kidnapping in the second degree, solicitation to commit assault in the first degree, and two counts of tampering with a witness.

In his statement on plea of guilty Femling agreed to the State's settlement offer in which the parties jointly would ask the court to enter an exceptional sentence of 216 months of confinement by running the convictions for solicitation (120 months) and for kidnapping (96 months) consecutively.  Both sentences represented the high end of the standard ranges.  Otherwise, Femling faced a standard term of confinement of up to 411 months for the original solicitation charge.

At his sentencing hearing, the court asked Femling if knew that he was stipulating to consecutive sentences and that he could not appeal such a sentence without being in violation of the plea agreement.  Femling acknowledged orally and in writing that he understood both and also agreed that an exceptional sentence was in the "interest of justice."  The court followed the parties' recommendation and sentenced Femling to 216 months total confinement for these crimes (the "2016 sentence").

Separately, in 2011, Femling had pled guilty to two crimes and was granted a drug offender alternative sentencing alternative (DOSA) sentence, which suspended a portion of his confinement on the condition he obeyed all criminal laws. Following the conviction in the present case, the DOSA sentences were revoked and the remaining suspended time imposed, which the court in this case ordered to run consecutively to the 2016 sentence.

The 2016 sentence was predicated in part on several convictions for possession of a controlled substance (PCS) under RCW 69.50.4013(1). After our Supreme Court's decision in Blake, which held that such convictions were unconstitutional, Femling moved for resentencing in 2021. 197 Wn.2d at 186. The State did not oppose his request to correct his offender score so that the three prior PCS convictions were removed from the calculation and the court did so.

But in several motions for resentencing, Femling also raised several of the arguments it now raises on appeal, each of which the resentencing court rejected. The court held the parties to the plea agreement, but found it was not obligated to follow their recommendation and would base its sentence on all available information before it. The court resentenced Femling to the same term of confinement on the solicitation conviction (120 months) but sentenced him to 62 months on the kidnapping conviction, which represented the low end of the standard range, for a total of 182 months. It held that its sentence accounted for the work commendations Femling provided and the programs he had completed in prison since the initial sentencing. And the court ran those sentences, as well as the DOSA sentence, consecutively, finding there was no need to resentence

the DOSA.

Femling timely appeals.

## II.     ANALYSIS

A.     Femling's Prior Bail Jumping Conviction

The 2016 sentence was predicated in part also on a conviction for bail jumping, where the PCS conviction was the underlying offense. Femling claims that the bail jumping conviction should not have counted in his offender score. As he had asserted in a separate appeal, he argues that, because his bail jumping conviction was based on his PCS convictions, the former is an invalid judgment and must be erased from his offender score, as was the latter. Alternatively, he contends that, because PCS was never an offense, the punishment for bail jumping where PCS was the underlying crime "remains undefined," and therefore, it should only be considered a misdemeanor. We disagree, noting that this court has already rejected both assertions.

As to the first argument, the fact that charges arose under a constitutionally valid statute is not required for a valid bail jumping conviction. State v. Paniagua, 22 Wn. App. 2d 350, 357, 511 P.3d 113 (2022). As to the second argument, this court has already rejected Femling's claim that we should reclassify his prior conviction as a misdemeanor. State v. Femling, No. 57512-4-II, slip op. at 2 (Wash. Ct. App. May 29, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2057512-4-

II%20Unpublished%20Opinion.pdf.[1]  And, our Supreme Court has denied his petition for review of that decision.  State v. Femling, 559 P.3d 497 (2024).  We see no reason to revisit either holding on these facts.

Thus, the trial court did not err by including the bail jumping conviction in Femling's offender score.

B.      Same Criminal Conduct

Femling argues the court erred when it found that the solicitation and kidnapping convictions do not constitute the same criminal conduct.  He contends that they do so and, thus, the two convictions should have been scored as one point.

When a defendant is convicted of two or more crimes the sentencing court may "enter[] a finding that some or all of the current offenses encompass the same criminal conduct," which reduces the offender score.  RCW 9.94A.589(1)(a).  But our Supreme Court has held the statute is "generally construed narrowly to disallow most claims that multiple offenses constitute the same criminal act."  State v. Porter, 133 Wn.2d 177, 181, 942 P.2d 974, 976 (1997).

"In order for separate offenses to 'encompass the same criminal conduct' under the statute, three elements must therefore be present: (1) same criminal intent, (2) same time and place, and (3) same victim."  Id.; see also RCW 9.94A.589(1)(a).  "The absence of any one of these prongs prevents a finding of same criminal conduct."  Id.

---

[1] We cite this decision pursuant to GR 14.1(a) as it is necessary for a reasoned opinion.

It is a defendant who bears the burden "of production and persuasion" on the issue. State v. Aldana Graciano, 176 Wn.2d 531, 539-540, 295 P.3d 219 (2013). A trial court's same criminal conduct determination will be reversed by an appellate court only when there is an abuse of discretion or misapplication of the law. Id. at 533, 535-38. "A court abuses its discretion when the record supports only one conclusion on whether crimes constitute the same criminal conduct." State v. Latham, 3 Wn. App. 2d 468, 479, 416 P.3d 725 (2018).

Our Supreme Court recently held that our cases "consistently" have looked to the statutory definitions of the crimes to determine the objective intent as "the starting point" in determining "'same criminal conduct.'" State v. Westwood, 2 Wn.3d 157, 167, 534 P.3d 1162 (2023). "If the objective intent for the offenses were the same or are similar, courts *can then* at whether the crimes furthered each other and were part of a same scheme or plan." Id. at 168. This analysis prevented courts from "speculating" over a defendant's proposed subjective purpose. Id. On the facts there, the Court also held that—because the State brought and proved beyond a reasonable doubt distinct charges each alleging a separate necessary statutory intent element, and because no challenge was raised concerning the sufficiency of the evidence supporting either charge—the objective analysis pointed to the conclusion that the crimes did not have the same objective criminal intent. Id. at 169.

As to the first crime here, a person is guilty of solicitation to commit assault in the first degree when, "with intent to promote or facilitate the commission of [assault in the first degree], he or she offers to give or gives money or other thing

of value to another to engage in specific conduct which would constitute such crime or which would establish complicity of such other person in its commission or attempted commission had such crime been attempted or committed." RCW 9A.28.030(1); RCW 9A.36.011(1) (specifying that person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm, assaults another and inflicts great bodily harm or death).

As to the second crime here, a person is "guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding or a person whom he or she has reason to believe may have information relevant to a criminal investigation . . . to [t]estify falsely or . . . [a]bsent himself or herself from such proceedings." RCW 9A.72.120(1).

Looking to these statutory definitions, it is plain that the crimes' corresponding objective intentions are distinct. For instance, a crime that could satisfy the intent for soliciting first degree assault—by promoting the commission of action resulting in great bodily harm or death—could then easily exceed the intent necessary for witness tampering, where a person could keep another from testifying by simply, say, bribing the witness to testify falsely. Or, a person could keep another from testifying without any desire to cause any physical harm, e.g., by directing the witness to the wrong courthouse on the wrong day.

In response, Femling starts his analysis, relying on State v. Collicott, 118 Wn.2d 649, 668-69, 827 P.2d 263 (1992), by arguing that we look to whether the two charges "are in regards to the same victim and are during the same timeframe"

and whether one offense "was done in furtherance" of another. This argument ignores the analytic structure of the most recent binding authority, which again sets as our starting point the objective intent made manifest in the statutory definitions of the crimes, and mandates for consideration the remaining factors only if needed. Westwood, 2 Wn.3d at 167-68. Again, the absence of any one prong prevents a finding of "same criminal conduct." Id. at 162. We simply need not reach Femling's arguments.

In short, Femling fails to carry his burden to show that the court abused its discretion in finding that the objective intent of the two crimes were distinct and, thus, we affirm the holding they did not encompass the same criminal conduct.

C.    Imposition of Exceptional Consecutive Sentence

Femling argues the resentencing court erred by imposing an exceptional sentence, which ran the solicitation and kidnapping convictions consecutively as he had agreed to in his original plea, but not at his resentencing. He asks us to remand this matter for resentencing and to order the court to run convictions in the 2016 sentence concurrently to each other and with his prior 2010 cases. We decline these requests first because he has waived his arguments on appeal about why such remedies are justified.

Appellate courts generally do not entertain issues not raised in the trial court. State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). An exception to the rule exists, however, for manifest errors affecting a defendant's constitutional rights. RAP 2.5(a)(3). But the exception must be construed narrowly. State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). "'Manifest' in RAP 2.5(a)(3)

requires a showing of actual prejudice." State v. O'Hara, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). Prejudice in this context means that the error had "practical and identifiable consequences in the trial of the case." State v. J.W.M., 1 Wn.3d. 58, 91, 524 P.3d 556 (2023). That said, this court has declined to even address whether a claim raised for the first time on appeal survives waiver if a party "fails to argue that any of the exceptions listed in RAP 2.5(a) apply." State v. Lindsey, 177 Wn. App. 233, 247, 311 P.3d 61 (2013).

At resentencing, Femling asked for a lower sentence, arguing that he was no longer bound by the plea agreement's terms because the Blake decision rendered the agreement invalid, and running the DOSA sentence consecutively was generically unjust. At oral argument, he conceded, "[t]here's, unfortunately, a lack of direct authority on point."

In contrast, the gravamen of Femling's argument on appeal is that, under the sixth amendment, the court could not impose an exceptional sentence again without a renewed stipulation or a jury finding. (Citing inter alia Blakely v. Washington, 542 U.S. 296, 304-05, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)); U.S. CONST. amend VI. This argument is simply new. And, in reply, Femling does not respond to the State's contention that this argument is waived and, thus, his claim fails under Lindsey, 177 Wn. App. at 247.

Though we need look no further, we alternatively hold that his arguments are equally unavailing on their merits. A defendant may argue for a lower sentence, but a court may bind the defendant to their stipulation that an exceptional sentence is legally justified. In re Pers. Restraint of Fletcher, 3 Wn.3d 356, 382,

9

552 P.3d 302 (2024). "Ultimately, the appropriate sentence must be determined by the independent judgment of the resentencing court in accordance with the [Sentencing Reform Act, chapter 9.94A RCW] SRA." Id.

Additionally, we have held that an appellant who does not challenge the validity of his plea agreement in his appeal cannot challenge a stipulation to an exceptional sentence he had made in that plea—one in which he agreed to a joint recommendation in exchange for the State not filing additional charges. State v. Poston, 138 Wn. App. 898, 900, 905, 158 P.3d 1286 (2007). The same is true here, where Femling stipulated to an exceptional consecutive sentence in exchange for lesser charges and a number of dismissed charges, significantly reducing his confinement, but not challenging the plea itself.

Even if Femling had not waived this issue, the fact that Femling did not stipulate to a consecutive sentence at the resentencing hearing did not preclude the court holding him to his prior stipulation.

D.    The Alleged Refusal to Impose an Exceptional, Mitigated Sentence Concurrent to Femling's 2010 cases

Under RCW 9.94A.585, a defendant generally may not appeal a standard range sentence, but this court will still review such a sentence under circumstances in which the trial court refused to exercise discretion at all or relied on an impermissible basis for refusing to impose the requested sentence. State v. Garcia-Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). "When a court has considered the facts and concluded there is no legal or factual basis for an exceptional sentence, it has exercised its discretion, and the defendant cannot appeal that ruling." State v. McGill, 112 Wn. App. 95, 100, 47 P.3d 173, 176

(2002).

Femling assigns error to the court's failure to impose a mitigated exceptional sentencing running his 2016 sentence concurrently with the 2010 sentence. To the extent that Femling argues the court abused its discretion by *failing* to exercise discretion, we reject that claim because the record indicates it did, in fact, exercise discretion, even if not in the manner Femling preferred. The court expressly held that it did not have to follow the plea agreement. And it ultimately departed from the prior sentence by deciding to sentence Femling to the low-end of the standard range on the kidnapping charge, rather than the higher range as the original sentencing judge had. The court further noted it relied on recent information about Femling's rehabilitation in prison. The court clearly exercised its discretion. McGill, 112 Wn. App. at 100.[2]

In short, Femling does not demonstrate the court abused its discretion based on an incorrect belief it lacked a legal ability to do what it actually did, which

---

[2] We also reject Femling's claim to the extent he asserts the court abused its discretion based upon an incorrect belief in the law. Femling appears to contend that the court incorrectly believed that it lacked authority to impose the sentence for his 2014 case concurrently to his 2010 case when RCW 9.94A.535 actually enabled it to do so. But he fails to provide sufficiently reasoned or supported argument for this position. Despite alluding to the statute's "clear wording," Femling quotes no language from RCW 9.94A.535 nor cites any particular provision of it, let alone explains how it indicated the court had authority to run a sentence for a subsequent case concurrently to a prior one that was already served because the earlier one was alleged to be unfair. Where a party fails to provide authority in support of a specific claim, we may "assume that counsel, after diligently searching, has found none." In re Pers. Restraint of Campbell, 27 Wn. App. 2d 251, 264, 533 P.3d 144 (2023); RAP 10.3(a)(6). Moreover, this court need not consider arguments that a party does not support with meaningful analysis or citation to pertinent authority. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

is to look at the facts, consider the law, and determine the appropriate sentence using its independent judgment in accordance with the SRA. Fletcher, 3 Wn.3d at 382.

E.      Victim Penalty Assessment Fee

Femling's judgment and sentence imposed a victim penalty assessment (VPA) fee. He now requests a remand to strike that legal financial obligation. The State concedes the matter should be remanded for that purpose. We accept this concession and remand this case to the trial court to strike the VPA in accordance with RCW 7.68.035(4) and RCW 43.43.7541(2).[3]

### III.     CONCLUSION

Though we reject Femling's other assignments of error, we remand this case to the trial court to strike the VPA fee.

Díaz, J.

WE CONCUR:

Coburn, J.                          Smith, C.J.

---

[3] Formerly, RCW 7.68.035(1)(a) mandated a $500 victim penalty assessment for all adults found guilty in superior court of a crime. State v. Mathers, 193 Wn. App. 913, 918, 376 P.3d 1163 (2016). In 2023, our legislature amended RCW 7.68.035 to state that "[t]he court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4). Further, courts are required to waive VPAs imposed prior to the 2023 amendments, on the offender's motion. Id.; RCW 7.68.035(5)(b).

12